10-1131 and 10-3440. Mr. Myers and Mr. Bashford. Good afternoon, and may it please the court. My name is Carl Myers from the law firm Stradley, Ronan, Stevens & Young, and I represent the appellants in this matter, Ken and Kim Croney, and I'd like to reserve three minutes for rebuttal time. We are here today, Your Honors, to address numerous errors by the district court in this case, which led to default judgments being entered against Mr. and Mrs. Croney. All that Mr. and Mrs. Croney seek is to have their day in court, to have their defenses heard, and to be able to defend themselves in this case. But unfortunately, due to the district court's handling of this matter, effectively a snap judgment has been entered against them to the tune of over $1.2 million, and it was done so on the basis of an ex parte letter that was sent to only counsel for Source Corp without a copy to prior counsel. In terms of what happened here, was the district court, when it entered the second order on January 8th of this year, did it think it was denying reconsideration or was it, do you think, ruling under Rule 60? I think it may have been neither of those, Your Honor. My take on what happened. What was the motion that they filed once the order was entered by the court on December 11th? They filed something on the 9th, right? Yes. And what was that? What was filed on the 9th by predecessor counsel for Mr. and Mrs. Croney was a motion to lift the entry of default by the clerk. That was the first motion that was filed. Then there was a motion, there was about a half a dozen motions that were filed by predecessor counsel for Mr. and Mrs. Croney. The second motion was to set aside the default judgment. But to answer Your Honor's prior question about the January order, we view that as it was a fait accompli at that point because both the court and the parties treated the December 9th order as the default judgment order. And the January 8th order was merely, I guess, finishing the job is one way to put it. But that order never itemized damages, did it? The December 9th order? Yes. No, Your Honor, it did not. You mean there's a December 11th order and a January 8th order, you mean? Yes, that's correct. The December 9th order was the original order that entered the default judgment against Mr. and Mrs. Croney. The December 11th order was the order that denied the initial relief that was requested by Mr. and Mrs. Croney. That's the order that has the footnote wherein Judge Tucker purportedly explains the rationale for her decision. The January 8th order is the one that's basically Sworce Corp's proposed form of order that laid out a number of items, one of which was the purported amount of the judgment. Just to clear also one thing out of the air. I initially perceived that there might be a Rule 58A issue, but in one sense one could make an argument that the January 8th order really subsumed what was in effect in the December 11th order. Conceivably, the December 11th order, the reason I ask you, was it 55 or 60 because it makes a difference, but possibly the worst thing that could have happened here is you had a premature appeal from the December 11th order. I think you're correct, Your Honor. I don't think we have any issue. In the case that I referred to, the Senate case. Correct. Correct, Your Honor. We don't think there's any issue here with the timeliness of the appeal. Your Honor's correct that at most you have what could be a premature appeal. I would hasten to add that there were actually two notices of appeal filed by predecessor counsel, one following the December 9th order, one following the January 8th order. And there was a third one, wasn't there, also with respect to the award of? The sanctions order, which I'm treating as sort of in a separate box at the moment. But while there isn't a specific Rule 58 issue, Judge Ambrose, I do think that it's indicative of it's yet another situation where the district court erred because I do think there is a Rule 58 problem with the January 8th order and that it doesn't comply with the separate document requirement. The January 8th order? Yes, that's correct. How so? Well, in that order, as I understand the separate document requirement, as Your Honor set forth in the Ascendant case, it's specifically designed to keep the judgment separate from the court's rationale. And in this case, in the January 8th order, there's a series of recitations of whereas clauses that purport to be factual findings. Now, I understand that is Source Corp.'s proposed form of order, but the court nevertheless adopted it. And some of those findings are, you know, findings of fraudulent. This is a three-page order that's called Final Judgment? Yes. Yes, Your Honor. I don't see a whole lot of whereas's. It looks like it's further ordered. It's further ordered. On the second page, I'm sorry, Your Honor. Go ahead. On the second page, Your Honor, it does lay out a number of items that are specific findings that don't relate to the judgment. And I don't want to belabor the point, Your Honor. I don't want to. I don't either. I think it would be hard for us to say that that's not a. But returning to the sort of substance and the core of our argument, we're deeply concerned with how this matter is handled, because while the form letter that was sent by the district court deputy clerk is often used to send, in cases where there's been no appearance by the defendant, basically it's a docket clearing tool. And we understand that. But in a case such as this one where there's been an appearance, a motion to dismiss filed, an act of defense by the defendants in the case, that certainly is not a situation where the district court should be sending ex parte letters, more or less requiring the plaintiff to move for entry of default. Well, certainly that was an administrative housekeeping matter that the district court clerk is instructed to do, per the local rules, correct? That's correct, Judge Fischer. I think it's stretching a little bit to call that ex parte communications. Judge Fischer, granted, I understand that there are, of course, certain matters that must be handled by deputies, and the judge simply cannot do everything him or herself. But those matters are limited to administrative matters. And I do want to dispense with one notion. We're not assigning any malice or false motive in the letter being sent. Of course, we would never do that. But it's simply just the fact of the matter that it was a communication not copied to an adversary. You just argue you should have gotten a copy of it. That's correct, Your Honor. And, in fact, your case would be harder if you had gotten a copy of it. Well, see, and that's actually the sort of nub of it. If the predecessor lawyer would have gotten a copy of that letter, none of this would have happened because presumably he would have seen that letter, and clearly he would have filed an answer immediately upon receiving that letter. He had a month. He was over a month late. Yes, that is conceded, Your Honor. There's no question that the predecessor lawyer for Mr. and Mrs. Croney missed the deadline under the rules. And, you know, in response to that letter, what Source Corp. asked for in the document that they filed, they asked for entry of default, correct? That's correct. They didn't ask for entry of default judgment. That's correct. They asked for entry of default. That's correct. And then what was entered? Well, what was entered, see, actually, this is actually another instance of error. Okay, what was entered as a response to that document? The clerk disposed of it. The clerk actually entered the default. What did the clerk enter? The clerk entered a default against Mr. and Mrs. Croney. A default, so everything's okay to that point, correct? Yes, everything is okay to that point, Your Honor. Yes, that's correct. Now, where does the first problem come up in your? Well, the first problem, putting aside the ex parte letter issue, is the district court's handling of that request for entry of default. The request for entry of default, as it should be, was addressed to the clerk, and the clerk disposed of it. And that resolved that matter. There was nothing for the district judge to take action on at that point. In fact, all that was before the district court was a request for default. And on December 9th, they entered an order. Can it be construed in the absence of any itemization of damages that all the district court had in front of it was a request for default, and that's all it did? May have added the word judgment, but that all really was before then to enter. Well, first of all, on the face of the order, it does not say that. It says it was entering a default judgment. But even if the court were to accept the argument that's been proffered by SourceCorp that none of these things can be taken on their face and that this was merely a ratification of what the clerk did, then you're sort of back to the point of the early January order. What was that? And that order also doesn't comply with the strictures of Rule 55 because Rule 55 is clear. It requires seven days' notice and a motion filed by the party that's looking for the default judgment. SourceCorp never filed a document that was asking for that relief at any time. And surely Mr. and Mrs. Cronin never got any kind of notification that the district court was going to be. When did the district court then enter at that point? On December 9th, Your Honor. Originally, there was a request. Originally, they should have entered a default, and they did. And what was the next thing that there should have been seven days' notice before a judgment was entered? Well, the next step, first of all, the district court judge did not need to take any action on the request for entry default. Okay, because once they entered a default, if nothing else ever happened in that case, ultimately that case would have been dismissed. Yeah, that's likely the case, although given the fact that there was an attorney that had appeared for Mr. and Mrs. Cronin, I highly doubt that that would have happened. But you're correct that the next step in the process would have been that SourceCorp would have had to file a motion providing at least seven days' notice for an entry of a default judgment. Did they do that? They did not. All right. Then what was the next order or judgment entered? The next order, well, there was a number of orders that addressed some of the motions. There was one on December 11th. That order disposed of a number of motions that were filed by a person. Go back a step. Yes, Your Honor. You said they never filed the motion for default judgment. In fact, they did file one on December 10th. They filed a motion seeking what they called a judgment. They just said motion for judgment. All right. And that was – I'm sorry, Your Honor. Okay. That was after the district court had already issued – There's such things as things crossing in the mail. And there are a number of instances of that happening, Your Honor. I think the request to set aside the entry of default by the clerk passed in the night with the district court judge's order on December 9th. So the district court entered an order for judgment? On December 9th, yes, Your Honor. And that was really a default? I'm just saying that is how everybody, to this point, until this appeal, has treated that order. Now, if the actual order that should be treated as a default judgment order is the January 8th order, it still doesn't comply with Rule 55. I mean, Rule 55 provides – given that a default judgment is such a drastic sanction, Rule 55 provides for safety valve devices within a structure. And one of them is a motion, and another one is a seven-days notice. Here, the cronies were blindsided with this default judgment. Was there any notice of motion for what was the date, January 8th? No, there was no notice. Well, there was a motion filed seeking entry of judgment. But that motion was not a motion under Rule 55 seeking a default judgment because everybody, including Source Corp., didn't think that that – I see I'm out of time. What was filed on December 10th, it seems like that might have been a motion that they realized the error of the order that was entered the day before, and therefore they were attempting to get a default judgment as opposed to a default. On the face of that motion, I submit, Your Honor, it simply can't be read that way. It doesn't ask for that relief. It doesn't specify that Rule 55 is to be invoked. What's it ask for? It simply asks for a judgment in the sense that specific items of relief be set out in an order so that they could proceed to execution. That was all that it asked for. And, again, it – And was it served? It was, yes, through the court's electronic filing system. Okay. Let's hear from Mr. Bashmore. We'll get you back on. Thank you, Your Honor. Appreciate it. Good afternoon, Your Honors, and may it please the Court. My name is Howard Bashmore, and I represent Appellee Source Corp, Incorporated. So as – Yes. What happened here? I mean, this is like a – this looks like a law school exam question on civil procedure. Judge Fischer, I think, framed it exactly as I would. It seemed like everything was okay through the time that a default was entered by the clerk. And then after that, it's just like one issue after another. Is there – I mean, I look at what was entered on December 11, and then I look at what was entered in January, and it looks like what was entered in January is on the merits throughout. And yet, how did the court ever get to the merits other than through a default judgment? Right, Your Honor. Let me begin at the beginning, which is when a party is in default, a default judgment, which results from that default, awards the relief that the plaintiff is seeking in its complaint. But a default judgment is usually preceded by a motion, right? And Source Corp, my client, did file the motion for judgment on December the 10th. And this is not a case where things are passing in the mail. As Your Honors know from your own court now, the District Court of the Eastern District of Pennsylvania is an ECF jurisdiction, electronic case files. So the December 9th order was received on December the 9th that Judge Tucker entered, stating that default judgment was entered. And on December the 10th, my client filed a motion. You only get those orders, though, at – do you get them when they're entered? You do. Or do you get them at midnight? You get them when they're entered, if that's what you've asked for when you registered with the court for immediate notice. All right, you get them for immediate – all right, I got you. So you – all right. I'm sorry, but, you know, it's confusing. We know that on December 8th, the cronies moved to set aside the entry of the default. Correct. Okay, and we also know that on December 11th, the court denied that motion but did it applying the test for vacating a default judgment, which is more stringent than the test for vacating a default. Well, Judge Greenberg, I appreciate that question. This court, in a case called Goldkist v. Lahrenberg from 1985, held that the same three-part test applies to both setting aside a default and setting aside a default judgment. So Judge Tucker was not committing error by discussing that three-part test in connection with the entry of default that had occurred under this court's ruling in the Goldkist case from 1985. Where things get messed up is on December 8th, the cronies moved to lift the default, as Judge Greenberg noted. Then on December 9th, one day later, the district court entered a default judgment stating that it is, quote, doing so – or doing so, quote, upon consideration of plaintiff's request for entry of default judgment. Well, there hadn't been any request for a default judgment. Don't worry. That comes the next day. The source court, I think probably realizing that the court had made an error, filed that motion. Then the next day, the court denies the cronies' motion to lift the default, and that's where it has the real long footnote. Right. And it's the only time that the district court actually addressed the cronies' arguments in support of lifting the default. And then – And at that time, the judge did have the cronies' proposed answer, which has remained constant throughout the case. So she had the cronies' proposed answer to the complaint attached to the motion to lift default that was filed on December 9th. And in terms of – Now, Mr. Pash, let me ask you this one question. On page A119, the document which your clients filed requesting default. Yes. At the bottom, there's an inscription. Right. That's the Texas style. That's the plaintiff's source court's request for entry of default judgment. Correct. What is that? Who put that there? The trial counsel for my client, who's with me at the counsel table, is with a firm that's based in Dallas, Texas. And this is the Texas style of pleadings where you have the title of the document at the bottom of the page. So they put that title on there. Correct. And they mistitled what they asked for. The actual title of the document, if you look above to the caption, underneath the caption, it says request for entry of default judgment. So the document itself contains the same title right below the caption. No, no. No, no? Plaintiff's source court request for entry of default. Okay. So you're saying it's missing the word judgment. Right. The plaintiff's source court request for entry of default judgment. But the ‑‑ You answered my question. The counsel for source court added that. Right. That is ‑‑ So you're stuck with that. For whatever it means, you're stuck with it. Right. That was on the bottom, but this is the document that requested the entry of default originally. Right. And the clerk understood that document properly, notwithstanding the mistaken title at the bottom of the page. Now, going fast forward. Yes. To January 5 of 09, court enters a one‑sentence order, denies the crony's remaining motions, and grants source court's motion for default judgment. Then it has on the long or the three‑page order on the 8th. Correct. What was happening in the interim here? I mean, it almost looks like it's ‑‑ there's acting too quickly, acting too quickly. Okay. I'm going to try to do something that deals with that. Well, maybe that didn't work. I'm going to add something else. At some point, don't you have to deal with the ‑‑ there was not really a motion that was heard with respect to the entry of default judgment? It's our position that the motion that source court filed that requested the entry of judgment, and that was the motion that was filed, let me just get the exact date here, on December 10, 2009, was the motion for entry of the default judgment because that specified what the relief was that the plaintiff was seeking. And the trial judge, Judge Tucker, understood it in that nature because when she granted that motion, as Judge Amber, you observed, on January the 5th, three days later, she followed up with the entry of an actual final judgment document. But there was never a hearing before the court, was there? The defendants were able to be heard by responding to the motion that source court had filed on December the 10th. So there was a hearing in that nature. There was not an in‑person hearing that the court convened to have the parties in to be heard from. But, in fact, what Judge Tucker did was proper, which is a default judgment is supposed to grant the relief that's sought in the complaint, and that is what she did. Now, I had prepared, if the court is interested, to discuss whether the cronies have cited any meritorious defenses. Well, they list five defenses. Right. I agree with you, it was cursory at best. But, still, we disfavor default judgments. And the question is, not that you probably won't prevail in the long run, but shouldn't we send it back and let them try to at least prove their defenses, give them some sort of chances? It's sort of the, you know, this circuit's always been one of the, leaders in the country are trying to get to the merits, as opposed to dealing with matters just procedurally here. And it seems like there was a whole lot of something missing here in terms of giving these folks, whether they don't have a meritorious defense or not, or whether they do or not, a chance to be heard. Let me begin with the context of the case, and then let me discuss the Third Circuit case law that I believe applies to answer your question. The overall context of the case, which Judge Tucker was very familiar with, because this is now the third case assigned to her, in which my client has been pursuing collection of this judgment, is that this default judgment represents the fourth time that my client has had to cross the finish line in an effort to collect upon an arbitration award that it won arising out of the earlier corporate transaction that gives rise to the debt that is reflected in the judgment. You may have, there may be a whole lot of sympathetic facts, but it looks like their counsel inadvertently thought while discovery was going on and then the court denied their motion that somehow there would be additional time for an answer. And, of course, the rules say no. It takes 14 days. They didn't do that. And where's the culpable conduct on behalf of their counsel? Well, aside from being unaware of the rules after having been ordered in the related case to That could be negligence. But where's the culpable conduct? Well, let me just disabuse some of the facts and I'll address the culpable conduct. There was not discovery going on in this case at the time the motion to dismiss was pending. There was no discovery that the defendants allowed to take place while their motion to dismiss was pending. There was discovery in the Villa Injury case, which is case number two, where judgment hadn't entered. There was post-judgment discovery in that case. And then when the motion to dismiss was denied, the defendants served no discovery on the plaintiffs. The plaintiffs had noticed the deposition of Mrs. Crony, which was to take place on December 2, 2009, if I have that date right, which is after the default was entered. So there was no discovery going on in this case. And if opposing counsel is arguing that you can't have a default or default judgment entered in a case where a party has moved to dismiss, that simply is not the law. The time for them to answer, as Judge Fischer had observed, had not only passed, but it had passed and passed and passed and passed and passed. And, Judge Amber, you're absolutely right that the Third Circuit has stated time and again that default judgments are disfavored. But in this Court's recent case law, including the Harad case from 1988 and the nationwide case that Judge Amber wrote as an unpublished opinion in 2006, this Court has undertaken an intense review of the merits to see if the defendant has alleged a meritorious defense. And what we have in the brief repellent that was filed in the default judgment action is these five bullet points, consisting of 136 words total, or one one-hundredth of the available word counts in a brief repellent, is what the repellent devotes to establishing in the brief repellent that they have meritorious defenses. Three of those five bullet points consist of nothing other than conclusory legal arguments, which this Court in the case of United States versus U.S. currency, a drug forfeiture case, said does not suffice to establish a meritorious defense. Conclusory assertions do not suffice. One of the assertions is the cronies cannot be found liable on a veil-piercing theory, because that's a very difficult claim to prove. Well, I think, you know, maybe we can all agree that veil-piercing is difficult to prove as a theoretical matter, but just asserting it's a difficult claim to prove does not establish a meritorious defense. As I said to you before, you may very well prevail completely, but there's – when you seek to overturn a default or – there's, you know, there's a three or four-prong test that we go through. Right. Whether there's prejudice, whether there's a meritorious defense, whether the conduct is culpable. I literally addressed culpable because you did ask about that. I don't think I devoted enough attention to that. This is a case where I believe, from looking at the record, in the view of Judge Tucker, she has accurately perceived that Mr. Crony is engaged in an elaborate shell game to try to hide and dissipate the assets that should be available to pay this judgment. There may be fraudulent advances. And I think that this strategy of delay, delay, delay, which is what the lawyer was engaging in by not keeping the litigation moving forward, is the culpable conduct here. And Judge Tucker – But what she found was that the conduct was either culpable or negligent. I agree that the negligent part may, standing alone, not be good enough. But as we pointed out in our brief under the Pioneer case, the U.S. Supreme Court has held that there is a standard – not knowing the rules and not following the rules is more than mere negligence and would satisfy the standard for default judgment. And what about the prejudice? I mean, the Court said that Source Corp would have to continue litigating. That's not – The prejudice really – I agree. Continued litigating is, by itself, not sufficient prejudice. But here we have a record, and it's somewhat ironic, because the appellants here engage in perhaps some of the most forceful briefing I've ever seen of a case, regardless of whether their arguments have any merit whatsoever. You know, I don't understand something. Yes. You said that the standard for setting aside a default is the same as setting aside a standard for setting aside a default judgment. I'm not trying to say that. What I am trying to say – I agree that it should be easier to set aside a default than to set aside a default judgment. What I am saying – Look at Rule 55. I agree. I agree. I'm very familiar with that rule. I mean, people – you know, you set aside a default, you have to show good cause. Well, it doesn't take any – all I'm saying is this Court has held that the three-part test applies in both situations. But what I was just leading up to – What about the effectiveness of alternative sanctions? Right. Court of dismissal. Is that in the briefing of the default issue, the cronies vehemently argue that the trial court will not find any merit in the contempt proceeding that had been initiated by my client in the trial court. And, of course, that's their second appeal, because the trial judge found that they were continuing to dissipate their assets even after they had agreed to two injunctions. And another notable thing about this case in my last eight seconds is that the cronies have not appealed from the final consent injunction, nor did they appeal from the preliminary consent injunction. So those two would not be affected by this Court's decisions. Their amended notice of appeal was filed before the final consent injunction was entered, and they never appealed from the final consent injunction. Thank you, Your Honors. Thank you. Thank you very much. Mr. Myers. Might you just address the prong dealing with meritorious defenses? What would their defenses be? I mean, to some extent, you get the impression that the Court perceived that anything that was going to be done here was going to be futile, and it was just time to put this case or cases to rest. First of all, to take that issue right off the top, we do not think it's proper at all for the district court to treat the prior cases as having some kind of precedential effect. Mr. and Mrs. Crony were not in those cases. They were cases against entities. This was an unsecured judgment or, I'm sorry, an unsecured loan that Source Court made, and now they're seeking to get the equivalent of a personal guarantee against Mr. and Mrs. Crony. And I offer that fact because while Source Court may want to try its case in this court, this is not the place for the case to be tried. All we have at this point is simply a complaint, an untested and unproven complaint. And while they've obviously painted a wonderful picture of their case, there's two sides to every story, and Mr. and Mrs. Crony are entitled to have their day in court to defend themselves. The claims in this case are a fraud claim, a veil-piercing claim, and an attorney's fees claim. All of those are very difficult claims to prove, and in the case of fraud there's an element of scene turn involved, quintessentially a jury question. But the case law that Source Court references is simply for cases where there's just simply, we didn't do it, is the response. Well, there's more than we didn't do it in this case. Mr. and Mrs. Crony intend to prove that all these expenses were legitimate, business expenses, all the transfers were legitimate, and they look forward to having their day in court about this. Judge Ambrose, I think you hit the nail on the head when you said that this case presents a, if I got your quote right, a law school exam question. I think it absolutely does. And under this court's precedence, that makes it a doubtful case of default. And this court's, as Your Honor correctly understood, this court's precedence require that doubtful cases must be resolved on the merits. This is at a bare minimum a doubtful case of default, and it should be heard on the merits. We would go one step further and argue that given that there was no notice, that Mr. and Mrs. Crony were blindsided with this, that it's actually a void judgment. It never was valid in the first instance. But at a bare minimum, it's one that's voidable, and it was an abuse of discretion for the district court not to void it and let Mr. and Mrs. Crony have their defenses heard. And in closing, I – Let me ask you this question. If we found that the court did not err in granting your motion to set aside the default judgment, if we found that, I'm not asking you to agree with that, but if we found that, isn't there an adequate basis just to affirm this on the basis that clearly your client had noticed they had the opportunity to file the particular motion that they filed, and at best there was maybe a technical error in calling the default a default judgment? Absolutely not, Your Honor. I cannot agree with that. Rule 55 says what it says for a reason. And simply because the time to answer had passed does not entitle a source court to a snap judgment. Rule 55 provides an opportunity for parties like Mr. and Mrs. Crony to have a default, which here, as Judge Amber correctly recognized, was entered simply by inadvertence. But that's what I'm asking. I'd ask you to agree with – go a step beyond your point. You filed your motion and set forth your reasons why they shouldn't have a default judgment. The court evaluated that and found that there wasn't a basis and refused to grant your motion. So if, in fact, we found that decision was correct, isn't there just merely a technical violation of the rule that required you to get seven days' notice, which in the end result you ended up getting? I don't think so. Even if we were to assume the premise of your question, there still has to be an application of that four-factor test. And as the court seems to be recognizing, this is a clear-cut case for – even within discretion, it's not acceptable. And in closing, I know I did not address it in the argument, but I think separate and apart from this particular appeal, the sanctions order simply is unsupportable and needs to be vacated in any set of circumstances. Well, if the default were vacated, default judgment were vacated, then that would – That's absolutely right. And even if the default judgment is not vacated, standing alone the sanctions order should be set aside for the reasons we've offered. I thank the court for its attention. Thank you. Thank you for both – both counsel for well-presented arguments in a complicated case. And take the matter under advisement.